## Case Mill Manufacturing Co. v. Vickers.

(Decided March 6, 1912.)

### Appeal from McCracken Circuit Court.

1. Principal and Agent—Warranty.—In the absence of pleading and proof showing that an agent employed to sell a sifter system was a general agent, or had authority from his principal to do more than make contracts in respect to the machinery he sold, his principal will not be bound by his warranty that the machinery already in the purchaser's mill would furnish sufficient power to operate the sifter system.

2. Contracts—Validity—Signing Without Reading—Fraud.—One who signs a written contract, refusing to read it, can not say that he did not know its contents, and is bound by its terms, except where he is misled and is not himself negligent.

HENDRICK & CORBETT for appellant.

BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, J. M. Case Mill Manufacturing Company, a Kentucky corporation, brought this action against appellee, T. S. Vickers, to recover the sum of $368.20, balance due on the purchase price of a sifter system which appellant sold to appellee for use in his flouring mill at Hamlettsburg, Illinois. Appellee defended on the ground that it was agreed between him and appellant through its agent that the sifter system would work satisfactorily with the machinery already installed in the mill; that this provision of the contract was omitted from the contract by fraud, oversight or mistake; that

the sifter system failed to work satisfactorily with the machinery in the mill; that by reason thereof he had been damaged in the sum of $250.00 which he paid as first installment on the purchase price, and in the further sum of $300.00, which he had expended in different ways in the installation of the system. These two sums he pleaded as a counter-claim, and asked judgment therefor against appellee. The jury returned a verdict in favor of appellee for $322.00. From the judgment predicated thereon, this appeal is prosecuted.

The contract between the parties is in writing, and was executed in duplicate, appellant retaining one copy and appellee the other. The purchase price was $500.00; $250.00 payable when the machinery was shipped, and $250.00 payable when the machinery was started and the guarantees fulfilled. The guarantees are as follows:

(2) "The company guarantees that said sifter system, consisting of: (Here follows the various parts)

(a) "Will be constructed of good material, suitable for the purposes, and in a thoroughly workmanlike manner, and that the finish will be in accordance with the material and workmanship.

(b) "That it will handle and bolt sufficient stock, properly reduced, to make 20 to 25 barrels of flour per day of twenty-four (24) hours run.

(c) "That it will make clean separations, and produce superior results when properly installed and intelligently operated.

The contract also contains the following provision:

(3) "The purchaser agrees to receive said sifter system from the carrier promptly on arrival at destination; pay freight on same, and furnish a suitable and sufficient building for same; install it at his expense, supply ample power connected to the mill to operate it."

The contract also contains certain provisions to the effect that the purchaser will notify the company in writing in case the guarantees are not fulfilled, in which event the company agrees to send a competent man to correct the fault, and the purchaser agrees to pay him $4.00 per day.

The contract also contains the following stipulation:

(12) "This agreement is complete, and is the entire contract between the parties hereto, and any modification of same, or verbal agreement not contained

herein, is hereby canceled, and is not binding on either party hereto."

Just after the signatures of the parties is the following:

"Subject to approval of and acceptance by the Company at its office in Louisville, Ky."

According to the evidence for appellee, appellant's agent, Mr. Buckley, came to see appellee for the purpose of having him buy his sifter system. Appellee told him that he was ignorant of the milling business, but that if he (the agent) thought appellee had sufficient power to run the system, he would take it. The agent went through the mill with the miller. Upon his return, he stated that he would guarantee the quantity and quality of the flour with the power appellee had. The contract was then prepared. Appellee was then asked the following questions, to which objections were overruled, and made the following answers:

Q. "I will ask you if you thought that contract that you signed embraced all the provisions you had talked over before?"

A. "Yes, sir."

Q. "I will ask you if it was represented to you that this contract embraced all the provisions that had been talked over by you and Mr. Buckley?"

A. "Yes, sir."

On cross-examination, appellee, in answer to the question if he read over the contract, said: "I don't believe I did." His clerk who testified for him, says that he thinks appellee read a part of the contract. Appellee's miller was not present when the contract was signed, but says that he came in just after it was signed, and thinks he looked over the first page of it. Appellee signed the contract in duplicate, and gave a copy of it to his clerk, who put it in the safe. The clerk and the miller also testify to the agent's statement that the sifter system would work with the machinery already in the mill. Appellee and his miller testify that the sifter would not work with the machinery in the mill; that appellant was notified of this fact and sent men there to remedy the defect, but they failed to make the machinery work.

According to the evidence for appellant no guarantees were made except those contained in the written contract. The contract was prepared in duplicate. Appellee held one copy, while the agent read over the con-

tract. It was then. signed. The copies were mailed to Louisville for approval and returned in three days. Appellee retained one copy, and never claimed that any part of the contract was omitted from the written contract, until suit was brought. The agent gave it as his opinion that the sifter system would work with the machinery in the mill if it was kept in proper condition. The agent was able to make it work, and it would have worked had appellee not permitted it to get clogged up.

It will be observed that the contract contains certain guarantees. It also provides that any verbal agreement not contained in the contract is not binding on either party. The contract was made subject to the approval of the company at its office in Louisville. The contract further provides that the purchaser should furnish a suitable and sufficient building for the sifter system, and should supply ample power connected to the mill to operate it. That being true, it follows that the contract appellee claims was made, is an entirely different contract from the one actually made.

We conclude that appellee failed to make out his case. In the first place, there was neither pleading nor proof of the authority of appellant's agent to bind appellant by any guarantees made by him with reference to the sufficiency of the power already in the mill to operate the sifter system. In the case of Lucile Mining Company v. Fairbanks, Morse & Co., 27 Ky. Law Rep., 1100, it was claimed that the agent who sold the machinery to the mining company, guaranteed that the boiler which the mining company then owned and was using in its plant, would furnish power to run the machinery then in use, and to operate the pump purchased of Fairbanks, Morse & Co., through the agent. The mining company alleged that the boiler which it then owned, proved insufficient to run the machinery and the pump, to its damage in the sum of $250.00, etc. In discussing the question involved the court said:

"The appellee had nothing to do with the sale of the boiler to the appellant. It was owned and used by the appellant at the time the pump was sold to it. The appellant was bound to know the capacity of its boiler, and the power it would furnish to operate the machinery. There are no averments in the answer to the effect that the agent of appellee had any authority to make any guarantee of machinery owned by appellant. It certainly was not in the apparent scope of his authority to

give such a guaranty; hence we do not think the answer contained any averments which showed that appellant had any cause of action against appellee by reason of the alleged guaranty of its agent."

And in the case of Second National Bank of Richmond, Indiana, v. Adams, etc., 29 Ky. Law Rep., 566, this court held that in the absence of anything in the record showing that an agent who sold a stacker was a general agent of the company, or had authority from his principal to do more than make contracts in respect to the machinery he sold, his principal would not be bound by the agent's warranty that an engine previously sold to the purchaser had sufficient power to operate the thresher and stacker.

Then, too, this is not a case where any confidential relation existed between the agent and purchaser, or where the purchaser could not read and write, or had to depend upon the agent. It is a case where an intelligent business man, who signed the contracts in duplicate, and who had them before him, claims not to have read them. In the recent case of J. I. Case Threshing Machine Company v. Mattingly, 142 Ky., 581, this court said:

"It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract, and if he will not read what he signs, he alone is responsible for his omission. A different rule prevails where the party is misled as to the nature of the writing, and is not himself negligent."

See also case of Blake v. Black Bear Coal Co., 145 Ky., 788.

The only proof that appellee was misled is his affirmative answer to the leading question: "I will ask you if it was represented to you that this contract embraced all the provisions that had been talked over by you and Mr. Buckley?" to which appellant's objection should have been sustained. In the absence of competent proof that appellee was misled, he will be held to the contract that he actually signed.

It follows that the peremptory instruction asked by appellant should have been given.

Judgment reversed and cause remanded for a new trial consistent with this opinion.