John T. CLARK, Appellant,

v.

Willie B. BREWER, Appellee.

Court of Appeals of Kentucky.

Nov. 20, 1959.

Marvin Snyder, William A. Miller, Louisville, for appellant.

Edward J. Hogan, Henry V. B. Denzer, Louisville, for appellee.

BIRD, Judge.

On the 12th day of February, 1957, William B. Brewer drove his small truck into the rear of John T. Clark's automobile.

William B. Brewer was covered by insurance and the insurance carrier, through its adjuster, started an immediate investigation. The police had previously investigated. Clark told neither the police nor adjuster about being hurt. In fact, Mr. Clark filed with the insurance company a "claimant's report" in which he stated that he had no personal injury. About two weeks after the accident he went to the adjuster's home in Hardinsburg, Indiana, to see about his claim for damage to his automobile. He, on this occasion, made no mention of any personal injury. On March 11, 1957, almost a month after the accident, the adjuster issued and delivered a check to Clark in the sum of $104.88. This was the amount claimed as damage to his automobile. On the back of this check was a release in words and figures as follows:

"The undersigned payee, hereby accepts the amount of this check in full settlement of all claims, both for known and unknown injuries and damages to both person and property which said payee claims to hold against any assured under the policy issued to the assured named on the face hereof, his heirs, executors, administrators, agents and assignees, arising out of an automobile accident which occurred on or about the date shown on the face of this draft immediately above the words Date of Accident."

The check was accepted and the release was signed by Clark. At this time no mention had been made of his personal injury.

However, Clark filed this action to recover damages for personal injuries. The defendant, Brewer, among other things pleaded the release. The plaintiff, Clark, pleaded mutual mistake as a defense to the execution of the release. Plaintiff's deposition was taken by the defendant. The adjuster's deposition was taken by the plaintiff.

The defendant moved for summary judgment under CR 56.03. The trial court, having before it the pleadings, exhibits and depositions, sustained the motion for summary judgment and entered one dismissing the complaint. The plaintiff appeals.

The trial court holds substantially that plaintiff's own evidence and the evidence of his witness, the adjuster, precludes the possibility of establishing mutual mistake, thus leaving no issue on any material fact. The plaintiff urges that the court is in error.

Let us look at the record. The terms of the release are unequivocal. The wording

is so simple that any person of plaintiff's intelligence would not only know that it was a release but that it was a full and complete release. There is no charge of fraud or misrepresentation. The plaintiff does not claim to have been misled or in any manner induced to sign the release by the defendant or any representative of the insurance company. Plaintiff's account of the signing is as follows:

"39. And on the back of that draft there was a release, was there not? A. Well, at the time I never noticed the release on the back of the check.

"40. You saw the printing on it? A. What I noticed on there—well, I just signed it because I knew that was just for the damages of the car.

"41. Isn't the word 'release' right up on top of it? A. I never noticed it on the check.

"42. It wasn't two inches from where you signed your name, was it? A. No.

"43. I imagine you have at least a high school education? A. Yes, sir; I have a Tenth Grade education.

"44. You are familiar with the necessity of reading or observing what you are executing, aren't you? A. Yes, I generally am.

"45. Have you since seen or do you know that you actually signed a release on that of all claims arising out of that accident? A. Well, no, I don't; all I knew was just for the amount of the car; that was all I was signing for."

The testimony shows in substance that plaintiff could read and that he simply assumed that the writing pertained solely to property damage. If there was such assumption, it apparently resulted from the machinations of his own mind. We find nothing in the record to indicate that either the defendant or his insurance carrier had anything to do with it.

When an instrument is clearly within the understanding of the parties, one who for a valuable consideration signs without reading and without inducement either to sign or not to read, cannot shelter under a claim of mistake. He is not truly mistaken in the content. He has simply made no effort to ascertain it. In Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S.W. 2d 38, 42, we said:

"Sharp admitted that he could read and write. 'It is a rule in this state that a party who can read and has an opportunity to read the contract which he signs must stand by the words of his contract, unless he is misled as to the nature of the writing which he signs, or his signature is obtained by fraud.' United Talking Machine Co. v. Metcalf, 164 Ky. 258, 175 S.W. 357, 358; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S.W. 758, 12 L.R.A.,N.S., 427; Blake v. Black Bear Coal Co., 145 Ky. 788, 141 S.W. 403; Case Mill Mfg. Co. v. Vickers, 147 Ky. 396, 144 S.W. 76; United Talking Machine Co. v. Metcalfe, 174 Ky. 132, 191 S.W. 881.

" 'The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.' 6 R.C.L. Contracts, § 43.

"These principles preclude Sharp from again saying he did not know the contents of form No. 9 and had no knowledge of the fact the checks were being paid to, accepted, and receipted for by him, under the Workmen's Compensation Act."

See also Sears, Roebuck & Co. v. Lea, 6 Cir., 198 F.2d 1012, 1015. In that case Judge Shackleford Miller said for the court:

"It is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud."

Following the principle stated in the foregoing excerpts we must conclude that the question of mistake is not involved in this action. This being true there is then no issue on any material fact and the court properly sustained the motion for summary judgment.

The judgment is affirmed.