RENDERED: JULY 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1066-MR

NORTHPOINT SENIOR SERVICES,
KY I, LLC                                                                APPELLANT


v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JULIE M. GOODMAN, JUDGE
ACTION NO. 21-CI-02295


ERNEISHA GEORGE                                                          APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND MᴄNEILL, JUDGES.

CETRULO, JUDGE: This is an appeal from the Fayette Circuit Court's denial of

Appellant Northpoint Senior Services, KY I, LLC's ("Northpoint") motion to

compel arbitration. Finding that the circuit court should have granted the motion

and submitted the matter to arbitration, we reverse and remand.

# FACTS

Since 2011, Appellee Erneisha George ("Ms. George"), had been employed, off and on, at Northpoint, a nursing facility in Lexington.[1] Throughout her tenure, Northpoint had an employee handbook, issued in several versions, which it typically distributed during orientation. Although Ms. George attended orientation when she first began working for Northpoint in 2011, she was not required to reattend orientation after any of the subsequent rehires.[2] Despite that, Northpoint provided Ms. George with updated Employee Handbooks on several occasions and required her to sign "acknowledgment forms" pertaining to Northpoint's employment policies. Northpoint followed that procedure in 2013, 2014, 2017, and 2019, and Ms. George signed five sets of acknowledgement forms.

After her most recent rehire, in November 2018, Northpoint distributed the 2019 Employee Handbook, a 57-page document, containing a three-page Arbitration Policy at the end. The Arbitration Policy, Section 10.0, provided

---

[1] The circuit court established that Ms. George had worked for Northpoint for three distinct periods of time and neither of her two breaks in employment were due to disciplinary issues. Most recently, Northpoint rehired Ms. George in November 2018, where she remained until her employment with Northpoint ended.

[2] Although Northpoint contends Ms. George was not "rehired" multiple times and instead only moved into new positions, the circuit court detailed the employment history in this manner. Northpoint concedes that this alleged discrepancy does not impact the arbitration issue; therefore, we will use the same verbiage as the circuit court for clarity.

that it covered claims including discrimination and retaliation, and the final

provision stated, in bold and all caps, that "**THE SUBMISSION OF AN**

**APPLICATION, ACCEPTANCE OF EMPLOYMENT OR THE**

**CONTINUATION OF EMPLOYMENT BY YOU SHALL BE DEEMED TO**

**BE ACCEPTANCE OF THIS ARBITRATION POLICY . . . . THIS POLICY**

**SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN YOU**

**AND [NORTHPOINT] FOR THE RESOLUTION OF COVERED CLAIMS**."

Ms. George signed the Acknowledgment and Receipt of Handbook, the

Responsibility Statement, and the Separation of Employment Acknowledgement

(together, the "Acknowledgement") on February 17, 2019.[3]

The Acknowledgment and Receipt of Handbook stated that Ms.

George received a copy of the 2019 Employee Handbook and that it was her

responsibility to read and understand the personnel policies contained therein. It

further stated that her employment was at will and that the "handbook and the

policies contained herein do not in any way constitute, and should not be construed

as, a contract of employment between the employer and the employee, or a

promise of continued employment." The Responsibility Statement acknowledged

that she had read the code of conduct and understood and agreed to comply with

---

[3] The parties agree that the 2019 Employee Handbook and Acknowledgment govern the issues before this Court.

those standards.  The Separation of Employment Acknowledgment stated, "**I hereby acknowledge the receipt of the employee handbook any [*sic*] by my signature below specifically agreeing [*sic*] to follow sections 9.1 and 10.0 of the employee handbook**[.]"[4]  The Separation of Employment Acknowledgment contained two signature lines – Ms. George signed both – between which it stated, "**[t]he submission of an application, acceptance of employment or the continuation of employment by you shall be deemed to have accepted this arbitration policy**."

In 2020, Ms. George voluntarily left her employment with Northpoint. In July 2021, she filed suit in the circuit court, alleging that Northpoint had discriminated against her on the bases of race, gender, and COVID-19 status, had created a hostile work environment, and had retaliated against her.  Citing the Acknowledgment, Northpoint filed a motion to dismiss and compel arbitration. Following limited discovery and two hearings on the arbitration issue, the circuit court denied Northpoint's motion.

The circuit court found that Northpoint did not require Ms. George to reattend orientation to receive the 2019 Employee Handbook when she was rehired.  Instead, the business office manager had given Ms. George the handbook

---

[4] Section 9.1 of the Handbook was titled "Leaving the Company."  Section 10.0 was the final section in the 2019 Employee Handbook, consisting of three pages outlining the Arbitration Policy.

"in a rushed and hurried manner" and had her sign the Acknowledgement while Ms. George was on duty, working with a patient. Although the business office manager did not recall the encounter, Ms. George testified that the business office manager approached her during her weekend shift, while in the hallway, and asked her "to sign a sheet verifying she received a copy of the updated Employee Handbook." Northpoint did not dispute those facts[5] and did not present evidence that it gave Ms. George an opportunity to review the handbook or discuss the Arbitration Policy. The circuit court found that Northpoint employees testified only to "what should have occurred, while Ms. George's testimony ha[d] been clear, specific, and unwavering."

The circuit court acknowledged that federal and state law favor arbitration, "when it is established that both parties have reached a valid agreement." *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 556 (Ky. 2008). The circuit court concluded that Northpoint had met its burden of showing a written arbitration agreement existed by providing proof of the handbook and signed Acknowledgement; therefore, it determined, the "statutory presumption of its validity" had accrued. However, the circuit court found Ms. George had

---

[5] Northpoint did present evidence that another employee was on duty the day Ms. George signed the Acknowledgment and therefore that employee may have actually been the one to give Ms. George the handbook. However, Ms. George presented evidence that employees other than those who signed in "on duty" routinely worked on the weekends.

successfully rebutted that evidence because she had claimed she did not have actual notice of the terms of the arbitration agreement. As such, the circuit court concluded that Northpoint did not sufficiently communicate the terms of the arbitration agreement to her. The circuit court found that there was no actual notice and no meeting of the minds under contract law to enforce the arbitration agreement. Northpoint appealed.

## STANDARD OF REVIEW

A valid arbitration agreement transfers all pre-judgment matters to arbitration and away from the courts. *Stanton Health Facilities, LP v. Fletcher*, 454 S.W.3d 312, 314 (Ky. App. 2015) (citation omitted). Thus, when a party such as Northpoint moves to compel arbitration, the circuit court must "decide under ordinary contract law whether the asserted arbitration agreement actually exist[ed] between the parties and, if so, whether it appli[ed] to the claim raised in the complaint." *Id*. at 315 (citing *N. Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010)).

When denying enforcement of an arbitration agreement, we review the circuit court's legal conclusions *de novo* "to determine if the law was properly applied to the facts[.]" *Energy Homes, Div. of S. Energy Homes, Inc. v Peay*, 406 S.W.3d 828, 833 (Ky. 2013) (citation omitted). Construction of a contract is a "purely legal determination" and, thus, reviewed *de novo*. *N. Fork Collieries*, 322

S.W.3d at 102. However, we review the circuit court's factual findings for clear error. *Id.* In so doing, we defer to the circuit court's factual findings, "upsetting them only if clearly erroneous or if unsupported by substantial evidence[.]" *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001).

**ANALYSIS**

Northpoint argues, first, that the circuit court's findings were not supported by substantial evidence and, thus, were clearly erroneous. The evidence was uncontroverted that Ms. George signed the Acknowledgement on February 17, 2019, and she testified that Northpoint asked her to sign it in the hallway, mid-shift, without an opportunity to read the handbook. In making this finding, the circuit court noted that Northpoint had not adequately disputed those facts and did not present evidence that it gave Ms. George an opportunity to review the handbook or discuss the Arbitration Policy. The circuit court specifically noted that Northpoint simply testified as to their standard practices because they could not recall the exact circumstances under which Ms. George signed the Acknowledgement. As the only testimony to those specific circumstances was from Ms. George, the circuit court found her recollection to be credible.

Further, the circuit court found that Ms. George was not present at an employee orientation in 2018, when the handbook provisions would have been discussed. However, it found she was present at an orientation in 2011. The

circuit court also found that Northpoint gave Ms. George a copy of the 2019 Employee Handbook, and she testified that Northpoint had given her prior versions of employee handbooks as well, each of which had contained the Arbitration Policy. The circuit court considered all the evidence before making its factual findings and supported those findings with substantial evidence. We find that the circuit court did not err in making those findings.

However, our review does not end there. Next, we turn to whether the circuit court's legal conclusions were proper. The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act ("KUAA") – Kentucky Revised Statutes ("KRS") 417.045-417.240 – and the Federal Arbitration Act ("FAA") – 9 United States Code ("U.S.C.") §§ 1-402. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 588 (Ky. 2012). "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Id.* In Kentucky, to form a valid and enforceable agreement, "there must be voluntary and complete assent by parties having the capacity to contract." *Cambridge Place Group, LLC v. Mundy*, 617 S.W.3d 838, 840 (Ky. App. 2021) (citing *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015), *as corrected* (Oct. 9, 2015), *judgment rev'd in part, vacated in part, on other grounds by Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017)).

The circuit court properly noted that

> [t]he burden of establishing the existence of an arbitration agreement that conforms to statutory requirements rests with the party seeking to enforce it, but once prima facie evidence thereof has been presented, the statutory presumption of its validity (KRS 417.050) accrues, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement.

*Valley Constr. Co. v. Perry Host Mgmt. Co.*, 796 S.W.2d 365, 368 (Ky. App. 1990).

The circuit court concluded that Northpoint met its burden that the arbitration agreement existed because it provided the 2019 Employee Handbook to Ms. George, which contained the Arbitration Policy, and Ms. George had signed the Acknowledgment. Thus, the circuit court found the "statutory presumption of its validity[,]" under KRS 417.050, had been met. In *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (citing *Valley*, 796 S.W.2d at 368), the Kentucky Supreme Court similarly found that the parties seeking to enforce the arbitration agreement had "met the prima facie burden by providing copies of written and signed agreements to arbitrate." As such, we agree Northpoint met its burden that an arbitration agreement existed between Northpoint and Ms. George.

However, the circuit court concluded that Ms. George had successfully rebutted that presumption. There, we must disagree. As this Court has noted, rebutting a presumption of validity is a heavy burden. *Valley*, 796

S.W.2d at 368 (citing *Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.*, 140 Ariz. 174, 680 P.2d 1235 (1984), and *Bd. of Educ., Taos Municipal Schools v. The Architects, Taos*, 103 N.M. 462, 709 P.2d 184 (1985)).

Specifically, the circuit court determined that because Ms. George had testified that she did not have the opportunity to read the agreement before she signed the Acknowledgment, she did not have actual notice of the arbitration agreement. The circuit court explained that Kentucky contract law requires a "meeting of the minds" for an arbitration agreement to be valid, citing *Harlan Public Service Company v. Eastern Construction Company*, 254 Ky. 135, 71 S W2d 24, 29 (1934) (citation omitted). Further, the circuit court stated that a party cannot be bound by uncommunicated terms without his or her consent. *Id.* Accordingly, the circuit court concluded that this necessarily includes the opportunity to read the agreement, citing *Conseco*, 47 S.W.3d at 341. However, importantly, this Court has clarified that failing to read an agreement does not constitute a deprivation of the "opportunity to read it":

> In general, a person who has the opportunity to read a contract, but does not do so and signs the agreement, is bound to the contract terms unless there was some fraud in the process of obtaining his signature. *Prewitt v. Estate Building and Loan Association*, 288 Ky. 331, 156 S.W.2d 173 (1941). *See Clark v. Brewer*, Ky., 329 S.W.2d 384 (1959). Thus, his negligence in failing to read the contract prevents any reliance on oral representations at the time of his signing. *Id.*

*Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 766 (Ky. App. 1985).

Still, relying on *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193 (Ky. 2002), the circuit court found that Ms. George did not receive actual notice of the arbitration policy. In *Oakwood*, our Supreme Court held that the employee failed to cite authority demonstrating that the employee could have reached a "meeting of the minds" with the employer "and agreed to arbitrate her claims without having actual notice" of the arbitration policy. *Id.* at 199. However, *Oakwood* is clearly distinguishable from Ms. George's circumstances.

There, the employer instituted an arbitration policy after the employee began working there and did not have the employee sign an agreement confirming she had notice of the policy. *Id.* at 195. Instead, the employer had simply "notified all employees by mail[,]" "published notice . . . in a weekly newsletter[,]" and had management discuss the policy with the employees. *Id.* The circuit court determined that such actions did not provide the employee with actual notice of the arbitration policy and denied the employer's motion to compel arbitration. *Id.* at 195-96. Because the employer failed to show that there could have been a meeting of the minds without actual notice, our Supreme Court found that the circuit court's "factual findings [were] supported by substantial evidence and that the trial court properly concluded that [the employee] had not contracted away her right to proceed in a judicial forum." *Id.* at 199.

-11-

Here, however, it was undisputed that the employer provided numerous versions of the employee handbook to Ms. George, which contained the Arbitration Policy. Further, Ms. George signed the Acknowledgement, confirming that she received the handbook, acknowledged that it was her responsibility to read and understand the policies contained therein, and that "by [her] signature . . . specifically agree[d] to follow sections 9.1 and 10.0 of the employee handbook." Section 10.0 outlined, in detail, the employee arbitration program. Importantly, the Acknowledgement contained two signature lines, between which it stated "**[t]he submission of an application, acceptance of employment or the continuation of employment by you shall be deemed to have accepted this arbitration policy**."

Indeed, the Supreme Court subsequently distinguished *Oakwood* in *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006), stating, "unlike the situation in *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193 (Ky. 2002), this was not a case in which the employer modified the conditions of employment unilaterally." In *Carhartt*, the employee had worked for the employer since 1995. *Id.* The employee's labor union, "[a]cting in its capacity as her collective bargaining agent," agreed to the arbitration provision. *Id.* Under those circumstances, our Supreme Court found the employee's "assent could properly be inferred from the fact that she continued in the employment after the provision

-12-

took effect." *Id*. Thus, "she was properly charged with knowledge of the terms of the provision[.]" *Id*.

In this case, Ms. George had worked at Northpoint since 2011. Throughout those years, Northpoint had provided various handbooks to Ms. George, which contained the Arbitration Policy. There was specific language that any covered claims by former or current employees must be submitted to arbitration and that this requirement applied to the very type of claims asserted by Ms. George in this action. The Arbitration Policy stands alone and has the same language as the Acknowledgement, in boldface and all caps that, "**THE SUBMISSION OF AN EMPLOYMENT APPLICATION, ACCEPTANCE OF EMPLOYMENT[,] OR THE CONTINUATION OF EMPLOYMENT SHALL BE DEEMED TO BE ACCEPTANCE OF THE ARBITRATION PROVISION**."

The evidence was also unrefuted that Ms. George signed directly above and below a second statement "acknowledging that the employee arbitration policy is a condition of my employment or continued employment with the Company." While she presented evidence that she did not read or understand the 2019 handbook before signing that, and the circuit court found her testimony to be credible, one is not required to have read and understood a contract when it has

-13-

been signed and her actions indicate acceptance of the contract's terms. *See Cline*, 690 S.W.2d at 766.

It is well-established that "one who signs a contract is presumed to know its contents[.]" *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959) (citation omitted). Indeed, Kentucky courts have even enforced unsigned arbitration agreements wherein the parties indicated acceptance through their actions. *See, e.g.*, *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. App. 2004). As in *Carhartt*, Ms. George assented to the arbitration agreement through both her signature and her continued employment. *See Carhartt*, 215 S.W.3d at 9; *see also Clark*, 329 S.W.2d at 387.

The circuit court also stated that if the handbook were deemed a valid contract, then the Arbitration Policy contained therein would be valid. However, the circuit court concluded as a matter of law that Northpoint's handbook, and thus the Arbitration Policy, did not create a valid contract in part because it contained precatory language to the effect that the handbook did not create a contract of employment, *i.e.*, that the employment remained "at will."

In so ruling, the circuit court relied upon *Furtula v. University of Kentucky*, 438 S.W.3d 303, 306 (Ky. 2014), which addressed whether employee handbooks may be considered an employment contract or incorporated into an employment contract. There, the majority of our Supreme Court concluded that

-14-

the employment handbook did not constitute a written contract of employment allowing them to sue their employer and bypass governmental immunity. *Id. Furtula* upheld Kentucky's long practice of employment at will and confirmed that disclaimers therein did not a create a written contract of definitive employment. *Id.* at 307. However, as the dissent explained, "[w]hile I agree that the disclaimers mean that the documents are not a contract of employment, i.e., one that changes the at-will nature of the employment, that does not mean the documents do not give rise to other contractual rights." *Id.* at 310-11.

Similarly, the circuit court's reliance on *Britt v. University of Louisville*, 628 S.W.3d 1 (Ky. 2021), is misplaced. In *Britt*, another sovereign immunity case, our Supreme Court held that a separate and valid written contract of employment between a professor and the university could also incorporate the employee handbook by reference. *Id.* at 8. The Court held that such incorporation requires clear express language and reciprocal obligations upon both parties to be bound to the underlying employment contract. *Id.* (citation omitted).

Here, the circuit court referred to *Britt*, stating that a valid employment contract must demonstrate an obligation by the employee to render service for a definite and fixed period of time and a reciprocal obligation on the employer's part to retain the employee's services. Again, *Britt* did not address arbitration provisions or employment at will situations but was limited to a

situation where there was an employment contract for a definite period of time. *Britt* is simply not applicable to this scenario.

The circuit court erred in concluding that the handbook's disclaimer of a "contract of employment" meant that there was no valid agreement between these parties. A disclaimer of a contract of employment and a statement that employment remains at will does not necessitate a ruling that there was no valid agreement between the parties as to other provisions in the handbook. Further, the Arbitration Policy specifically stated that "this policy shall constitute the entire agreement between you and [Northpoint] for the resolution of covered claims." Indeed, our Supreme Court has stated that "[o]nce an employer establishes an express personnel policy and the employee continues to work while the policy remains in effect, the policy is deemed an implied contract for so long as it remains in effect." *Parts Depot Inc. v. Beiswenger*, 170 S.W.3d 354, 363 (Ky. 2005).

Ms. George signed a valid Acknowledgment, agreeing to arbitrate her claims, and she is presumed to know the contents of that policy. While the handbook did not constitute an employment contract obligating either party to a specific term of employment, the provisions contained therein as to arbitration can nevertheless be enforced. Based on our review of the authorities pertaining to arbitration agreements and the presumption in favor of arbitration outlined in those authorities, we conclude that the circuit court erred in finding that Ms. George did

not have actual notice of the Arbitration Policy and thereby successfully rebutted the presumption of a valid agreement. While this writer understands the circuit court's concern about the number of arbitration agreements being required of employees, it is not for this Court to make law or to ignore the authorities outlined herein.[6]

We now turn to the issue of unconscionability. Ms. George asserts that even if this Court finds an arbitration agreement was formed in 2019, it is void as being unconscionable. Although Ms. George did not raise unconscionability below, we address it briefly. Ms. George argues the Arbitration Policy was procedurally unconscionable "due to the manner in which it appears and the way in which [Ms. George's] signature was procured."

As discussed, "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Schnuerle v. Insight Communications Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (quoting *Conseco*, 47 S.W.3d at 341) (internal

---

[6] Arbitration agreements "constitute a waiver of the right to a trial by jury, which is a fundamental right." *Jackson v. Legacy Health Servs., Inc.*, 640 S.W.3d 728, 735 (Ky. 2022) (citations omitted); s*ee also* KY. CONST. § 7. There was some brief discussion in the circuit court regarding the potential applicability of 9 U.S.C. § 401, the "Ending forced arbitration of Sexual Assault and Sexual Harassment Act of 2021," although neither party raises that Act before this Court. The circuit court did not address the applicability in its opinion, and we note this only to state that the Act provides that a predispute arbitration agreement may not be valid as to the certain employment claims after its effective date of March 3, 2022. However, this complaint was filed in July of 2021, and alleged events which occurred prior to the effective date of the Act.

quotation marks omitted). "The doctrine of unconscionability has developed as a narrow exception to th[at] fundamental rule." *Id.* The doctrine "is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.*

Most recently, in *Green v. Frazier*, 655 S.W.3d 340, 345 (Ky. 2022), our Supreme Court reaffirmed the heavy burden upon one opposing arbitration to establish that an arbitration agreement was not enforceable. Here, both parties are bound by the same Arbitration Policy, and there was consideration provided in the continuation of employment itself. Further, the Acknowledgment Ms. George signed specifically referenced Section 10.0, the Arbitration Policy, which was similar to that found *not* to be unconscionable in *Green*.

> There, our Supreme Court reversed this Court, holding that
>
> the Court of Appeals erred in concluding that inconsistencies among the various arbitration provisions created ambiguity requiring voiding of the arbitration agreement. This issue was addressed in *Louisville Peterbilt*. In that case, Cox, the plaintiff, generally alleged unconscionability based on inconsistencies in the various agreements, that the agreements were contracts of adhesion, and the transaction constituted a failure of the meetings of the minds. . . . Because Cox signed two separate agreements stating claims would be arbitrated and failed to allege fraudulent inducement to do so, we held that "all other alleged disputes are for an arbitrator." *Id.* That holding applies here as well.

*Green*, 655 S.W.3d at 348 (citations omitted).

As Ms. George makes similar claims as the employee in *Green* and *Louisville Peterbilt*, we must adhere to our Supreme Court's holding in *Green* and find this Arbitration Policy was not unconscionable. Based on the foregoing authorities, we must conclude that the circuit court erred as a matter of law when it denied Northpoint's motion to compel arbitration. The Fayette Circuit Court Order to the contrary is REVERSED. We REMAND this matter for proceedings consistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David E. Crittenden
Seth J. Singleton
Louisville, Kentucky

BRIEF FOR APPELLEE:

Kamp Townsend Purdy
Lexington, Kentucky