**GALIGHER TRUCKS, INC., Ford Motor Company and Ford Motor Credit Company, Appellants,**

v.

**Ervin Wade McKENZIE, Appellee.**

Court of Appeals of Kentucky.

May 13, 1977.

Rehearing Denied July 8, 1977.

Harris S. Howard, Howard & Howard, Prestonsburg, Michael J. Schmitt, Wells, Porter & Schmitt, Paintsville, for appellants.

W. B. Hazelrigg, James A. Knight, Paintsville, for appellee.

Before COOPER, HOGGE and REYNOLDS, JJ.

COOPER, Judge.

In June 1971, the appellee, Ervin Wade McKenzie purchased two coal trucks from the Galigher Trucks, Inc. of Pikeville, Kentucky. The price of the coal trucks was about $25,000 with finance charges. Immediately, upon using these coal trucks in hauling coal from strip mine operations, the trucks started giving the Appellee trouble. One truck, according to the record, was severely out of line while the other truck had starting problems. Upon apprising the Galigher Trucks, Inc. and the Ford Motor Company that the trucks were not running properly, the Appellee was directed to take the trucks to various garages around eastern Kentucky and West Virginia to have the trucks repaired. Apparently the truck with starter problems was repaired, but the truck which was out of line was never repaired to the satisfaction of Mr. McKenzie. In June of 1972 he parked both his trucks and ceased his payments to the Ford Motor Credit Company, who had purchased the installment sales contract for the trucks from the Galigher Trucks, Inc. The trucks were then repossessed in November of 1972, by the Ford Motor Credit Company. It is clear from the record that at no time in his communications with the Galigher Trucks, Inc., the Ford Motor Company, or the Ford Motor Credit Company, did the Appellee

ever reject the trucks or revoke his acceptance of them. According to his testimony, he informed the Appellants that the trucks were going to sit idle and he was going to cease payments until the trucks were sufficiently repaired.

The pertinent expressed warranty made by the Ford Motor Company covering the two trucks in question reads as follows:

"Ford and the selling dealer jointly warrant with the respect to each 1971 model medium and heavier truck built by Ford that the selling dealer will repair or replace any of the following parts that are found to be defective in factory material or workmanship on the following basis:

Any part during the first twelve months or during the first 12,000 miles of operation, whichever occurs first (except tires and diesel engines manufactured by others than Ford, which are separately warranted by their manufacturers); without charge for parts and labor."

The Appellants would contend that there was no proof that this express warranty was breached. It is apparent from the record that from the very outset the trucks were defective. Consequently, we hold that there was ample evidence to warrant sending the question of a breach to the jury.

However, the dispositive issue is whether or not a proper instruction for damages was given to the jury. The lower Court gave instructions which stated that if the jury believed that the warranty for the trucks had been breached by the Appellants, then the Appellee could recover his damages in a sum equal to the down payment made by him for the two trucks, for the payments made to the Ford Motor Credit Company, for any loss of profits which he may have sustained, and for other equipment which the Appellee had to furnish because of the defects in the trucks. We hold that these instructions were erroneous under this set of facts. In a situation where a buyer has not revoked acceptance or rejected goods when the goods are not as warranted, damages shall be given pursuant to KRS 355.2–714(2) which reads as follows:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Since the Appellee did not revoke acceptance or reject the trucks because of their nonconformity, evidence should have been offered by the Appellee as to the difference in the reasonable market value of the trucks in June of 1971, and their contract price. KRS 355.2–714(2); *Cox Motor Company v. Castle*, Ky., 402 S.W.2d 429 (1966).

The Appellee contends that the instructions for damages are proper because of the Appellant's assurances that the trucks would be repaired. These assurances would be more significant if the question were whether or not the rejection of the trucks or the revocation of acceptance was within a reasonable time after the breach. In this case, we find no evidence that there was ever a revocation or a rejection; but that the Appellee merely parked the trucks, ceased payments on the trucks pursuant to the sales contract, and waited for the Appellants to repair the trucks so that they might conform as warranted. Under these circumstances, KRS 355.2–714 must be applied in allowing damages for the breach of warranty.

We reverse and remand the case to the lower Court for action consistent with this opinion.

All concur.