**FORD MOTOR COMPANY, Appellant,**

v.

**Larry W. MAYES, Glenda J. Mayes, his wife, and North City Ford, Inc., Appellees.**

Court of Appeals of Kentucky.

Sept. 22, 1978.

As Modified Sept. 29, 1978.

Discretionary Review Denied Jan. 30, 1979.

Edward H. Stopher, Louisville, Clarence McCarroll, Owensboro, for appellant.

Maubert R. Mills, Madisonville, Albert W. Spenard, Madisonville, for appellees.

Before COOPER, HOGGE and PARK, JJ.

PARK, Judge.

Ford Motor Company appeals from a judgment awarding Larry and Glenda Mayes compensatory damages of $5,135.38, punitive damages of $25,000, and attorneys fees of $5,000. Mr. and Mrs. Mayes had purchased a new 1976 Ford F–150, 4-wheel drive, pickup truck which was covered by Ford's 1976 new car and light truck "limited" warranty. The judgment was based upon a jury verdict finding that Ford's con-

duct relating to the warranty constituted an unfair trade practice in violation of the Kentucky Consumer Protection Act of 1972 (KRS 367.110 to 367.300).

On this appeal, Ford raises the following issues: (1) that there was no evidence that Ford had engaged in any unfair trade practice within the scope of the Consumer Protection Act; (2) that the trial court erred in permitting the jury to award punitive damages; (3) that the trial court erred in permitting the jury to return a verdict for consequential damages; and (4) that the trial court erred in awarding attorney's fees.

I

FACTUAL BACKGROUND

In deciding whether Ford was entitled to a directed verdict on the issue of liability, we must view the evidence in the light most favorable to Mr. and Mrs. Mayes.

Mr. and Mrs. Mayes purchased the truck in Madisonville on February 25, 1976, from an authorized Ford dealer, North City Ford, Inc. A number of minor defects in the truck were repaired by North City shortly after the purchase. Approximately five weeks after the purchase, Mr. Mayes noticed unusual noise and vibration in the truck. Upon inspection, North City discovered worn clutches in the rear end of the truck. These were replaced, but the grinding noise and vibration continued. Mr. and Mrs. Mayes returned the truck to North City on seven or eight more occasions. North City made fruitless attempts to eliminate the problem by replacing or repairing clutches, transmission gears, the steering mechanism and other parts. On several occasions, North City's employees sought assistance from Ford's district office in Louisville. Ford was of no assistance in determining the cause of the noise and vibration. Its suggestions were limited to a recommendation that the drive shaft be wrapped with springs and that liquid foam be pumped into the drive shaft in an attempt to deaden or mask the noise.

After North City was unable to correct the problems with the truck, one of Ford's engineers suggested that the frame of the truck might be bent. Because North City did not have the equipment necessary to make such a determination, the truck was taken to the Myers Frame Shop in Hopkinsville. On August 6, 1976, Myers determined that the truck frame was twisted approximately 2½ inches and that it was "diamonded" approximately 1 inch.

On August 26, 1976, Mr. and Mrs. Mayes returned the truck to North City with written notice that they were revoking their acceptance of the truck. According to evidence introduced on behalf of Mr. and Mrs. Mayes, a twisted and diamonded frame would cause excessive wear and tear to all moving parts of the truck. When informed of the attempt by Mr. and Mrs. Mayes to revoke acceptance of the truck, Ford informed North City that it would not under any circumstances repurchase the truck, furnish Mr. Mayes with a new truck, or extend the period of its warranty. Ford had a firm long-standing policy against replacing or repurchasing defective motor vehicles. Ford suggested that the truck be brought to its Louisville facilities so that Ford engineers could confirm the diagnosis of Myers Frame Shop and, if necessary, attempt to make "corrective repairs." No longer acknowledging ownership of the truck, Mr. and Mrs. Mayes declined to grant permission for the truck to be taken to Louisville. This litigation ensued.

II

Ford argues that its limited warranty constituted a lawful trade practice authorized by the Uniform Commercial Code. Ford also asserts that its conduct relative to the truck of Mr. and Mrs. Mayes was specifically authorized by the limited warranty. Ford then concludes that it was entitled to a directed verdict as a matter of law on the issue of its liability under the Consumer Protection Act. On the other hand, Mr. and Mrs. Mayes contend that Ford's warranty policy denied them remedies afforded by the Uniform Commercial Code. They fur-

ther argue that Ford's policy of refusing to recognize a buyer's remedies under the Uniform Commercial Code is unconscionable, and therefore an unfair trade practice under the Consumer Protection Act.

### FORD'S LIMITED WARRANTY

The warranty accompanying the sale of the truck by North City to Mr. and Mrs. Mayes provided as follows:

LIMITED WARRANTY

1976 NEW CAR AND LIGHT TRUCK

Ford warrants for 1976 model cars and light trucks sold by Ford that the Selling Dealer will repair or replace free any parts, except tires, found under normal use in the U.S. or Canada to be defective in factory materials or workmanship within the earliest of 12 months or 12,000 miles from either first use or retail delivery.

.   .   .   .   .

THERE IS NO OTHER EXPRESS WARRANTY ON THIS VEHICLE.

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS LIMITED TO THE 12 MONTH/12,000 MILE DURATION OF THIS WRITTEN WARRANTY.

NEITHER FORD NOR ANY OF ITS DEALERS SHALL HAVE ANY RESPONSIBILITY FOR LOSS OF USE OF THE VEHICLE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR CONSEQUENTIAL DAMAGES.

Ford's 1976 limited warranty is different from other new motor vehicle warranties previously considered by the appellate courts of this state.

Under the Uniform Commercial Code, a seller of goods has two means of limiting warranty liability. The seller may disclaim warranties (KRS 355.2–316), or the seller may limit the remedies available to a buyer

for breach of warranty (KRS 355.2–719). See generally Note, Legal Control of Warranty Liability Limitation under the Uniform Commercial Code, 63 Va.L.Rev. 791 (1977); Comment, What Chance for the New Car Purchaser of a "Lemon"?, 62 Ky. L.J. 557 (1974). Most litigation in Kentucky has involved efforts to exclude all implied warranties. See Childers & Venters, Inc. v. Sowards, Ky., 460 S.W.2d 343 (1970); Massey-Ferguson, Inc. v. Utley, Ky., 439 S.W.2d 57 (1969). Contractual limitations on the buyer's remedies for breach of warranty have been considered on only one occasion. See Cox Motor Car Co. v. Castle, Ky., 402 S.W.2d 429 (1966).

In its 1976 warranty for new cars and light trucks, Ford makes no effort to disclaim or exclude implied warranties such as the implied warranty of merchantability under KRS 355.2–314.[1] However, Ford's warranty does attempt to limit the buyer's remedies for breach of contract. The only express remedy afforded the buyer under Ford's warranty was repair or replacement of any parts found to be defective under normal use within the "earliest" of 12 months or 12,000 miles. The warranty expressly stated that neither Ford nor its dealer would have any responsibility for loss of use, loss of time, inconvenience, commercial loss or consequential damages.

We agree with Ford that this limitation of the buyer's remedy is not prohibited under Kentucky law. KRS 355.2–719(1)(a) provides that an agreement may limit a buyer's remedies under the sales article of the Uniform Commercial Code "to repair and replacement of non-conforming goods or parts." Furthermore, subparagraph (3) of the same statute provides that consequential damages may be excluded unless the exclusion is "unconscionable." However, subparagraph (2) of KRS 355.2–719 provides:

1. Ford's 1976 warranty was obviously drafted in light of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301–2312). Because Ford did make a written warranty to consumers with respect to its products, Ford was prohibited from disclaiming or modifying any implied warranty other than to limit the duration of the implied warranty. 15 U.S.C. § 2308. We also note that Ford's warranty is conspicuously designated as a "limited warranty" thereby avoiding the necessity of meeting the federal minimum standards for warranties applicable to a "full warranty." 15 U.S.C. §§ 2303(a)(2) and 2304.

Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

Therefore, Ford's limitation of the buyer's remedy to repair or replacement of defective parts was valid unless the exclusive remedy of repair or replacement of defective parts failed of its essential purpose, and the disclaimer of liability was valid unless "unconscionable."

The purpose of the limited remedy clause can best be understood by reference to a buyer's remedies for breach of warranty in the absence of any contractual limitation. If after acceptance of a new motor vehicle the buyer discovers a defect which "substantially impairs" the value of the vehicle, the buyer under certain circumstances has the right to revoke his acceptance of the vehicle. KRS 355.2–608. In effect, the buyer may rescind the contract. Revocation of acceptance authorizes the buyer to recover any part of the purchase price which he has paid for the vehicle. KRS 355.2–711(1).[2] In addition to recovery of the purchase price, the buyer may also be entitled to damages. KRS 355.2–712. If the buyer does not revoke acceptance, he is entitled to damages under KRS 355.2–714. In either case, damages may include incidental and consequential damages. KRS 355.2–715.

In *Beal v. General Motors Corp.*, 354 F.Supp. 423, 426 (D.Del.1973), the court made the following analysis of a warranty limiting the buyer's remedy to repair or replacement of defective parts:

The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an express warranty, is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. . . . The limited, exclusive remedy fails of its purpose and is thus avoided under § 2–719(2), whenever the warrantor fails to correct the defect within a reasonable period.

We agree with this analysis. When the selling dealer fails within a reasonable time to correct a defect which substantially impairs the value of a new motor vehicle, the buyer is entitled to revoke his acceptance of the vehicle. *Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976); *Jacobs v. Metro Chrysler-Plymouth, Inc.*, 125 Ga.App. 462, 188 S.E.2d 250 (1972); *Durfee v. Rod Baxter Imports, Inc.*, Minn., 262 N.W.2d 349 (1977); *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J. Super. 441, 240 A.2d 195 (1968); *Moore v. Howard Pontiac-American, Inc.*, Tenn.App., 492 S.W.2d 227 (1972); see *Galigher Trucks, Inc. v. McKenzie*, Ky.App., 553 S.W.2d 294 (1977).

In this case, the truck purchased by Mr. and Mrs. Mayes contained a serious defect. For more than five months, Mr. and Mrs. Mayes gave Ford and North City an opportunity to correct that defect. As required by Ford's warranty, Mr. and Mrs. Mayes returned the truck to the selling dealer, North City, seven or eight times for major repairs. The problems were never corrected. When the trouble was finally diagnosed as a twisted and diamonded frame, Ford would not extend the duration of the warranty even though the defective frame would cause excessive wear to all moving parts. The value of the truck was substantially impaired within the meaning of KRS 355.2–608. As the court commented in *Zabriskie Chevrolet, Inc. v. Smith, supra*, 240 A.2d at 205:

For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from

---

2. The seller may be entitled to an offset against the purchase price for any benefit to the buyer from use of the vehicle prior to revocation of

acceptance. *See Pavesi v. Ford Motor Co.*, 155 N.J.Super. 373, 382 A.2d 954 (1978), and cases cited therein.

its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension.

Mr. and Mrs. Mayes were entitled to revoke their acceptance of the truck at the time they returned the truck to North City on August 26, 1976. The purpose of the limited remedy of repair and replacement of defective parts had failed.

### THE CONSUMER PROTECTION ACT

■ Under the Kentucky Consumer Protection Act, all "unfair" acts or practices in the conduct of any trade or commerce are declared to be unlawful. KRS 367.170(1). The term "unfair" is defined to mean "unconscionable." KRS 367.170(2). Any person who purchases goods primarily for "personal, family or household purposes" and who thereafter suffers any ascertainable loss as a result of any act declared unlawful by KRS 367.170 is authorized to bring a civil action to recover actual damages. KRS 367.220(1). Ford asserts that it committed no unfair or unconscionable act which was unlawful under the Consumer Protection Act. We disagree.

When Mr. and Mrs. Mayes properly revoked acceptance and returned the truck to the selling dealer, North City made a request that Ford either replace the truck or repurchase it. This Ford refused to do. Ford took the position that repair and replacement of the defective parts was the only remedy available to Mr. and Mrs. Mayes. Ford maintained that anything mechanical eventually can be repaired. Ford's owner relations manager for 172 dealers in three states testified that Ford had a firm policy against repurchasing or replacing a defective new car. This policy was applied without regard to the actual defect found in the car. Ford's insistence that the buyer must acquiesce in further attempts to repair any defect rather than receiving reimbursement of the purchase price or tender of a substitute vehicle has been noted before. *Pavesi v. Ford Motor Co.*, 155 N.J.Super. 373, 382 A.2d 954 (1978). Before this court, Ford has continued to refuse to recognize the right of a buyer to revoke acceptance if Ford and its selling dealer fail to remedy the defect within a reasonable time. In its brief, Ford stated:

> Ford's valid warranty limited the plaintiffs' remedy to repair and replacement of parts and excluded return of the vehicle and repayment of the price.

This position is untenable. Even if revocation of acceptance was available as a remedy only against the selling dealer, Ford was liable in damages for breach of its warranty. *Volvo of America Corp. v. Wells*, Ky. App., 551 S.W.2d 826, 829 (1977).

By insisting that its only liability was to repair or replace defective parts even when the defects could not be corrected within a reasonable time, Ford would use the strict language of the express warranty to deprive Mr. and Mrs. Mayes of the benefits of their purchase. This Ford cannot do. *Myers v. Land*, 314 Ky. 514, 235 S.W.2d 988, 991 (1951). Ford offered no evidence that the frame of the truck could be repaired or replaced. Assuming for the moment that Ford could have repaired or replaced the frame at its Louisville plant, the fact remains that the various moving parts of the truck had been subjected to unusual stress and wear because of the defective frame. Mr. and Mrs. Mayes would never have received what they bargained for, namely a new truck fit for the ordinary purposes for which trucks are used and free from defective parts. At best, they would have been left with a prematurely aged truck for which Ford had refused to extend the warranty period.

Although the limitation of the buyer's remedies was not unconscionable on its face, Ford's warranty policy was unconscionable as applied to Mr. and Mrs. Mayes. *Eckstein v. Cummins*, 41 Ohio App.2d 1, 321 N.E.2d 897 (1974). After breach of its duty under the express warranty to repair or replace defective parts within a reasonable time, Ford could not, in good conscience, attempt to hide behind any provision making the express warranty the sole remedy of

the buyer. *Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365 (8th Cir. 1977); *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39 (N.D.Ill.1970); *Ehlers v. Chrysler Motor Corp.*, S.D., 226 N.W.2d 157 (1975); *Durfee v. Rod Baxter Imports, Inc., supra.*

Because the truck could not be repaired within a reasonable time, Ford acted "unconscionably" when it insisted that Mr. and Mrs. Mayes had no remedy other than to allow Ford and its dealer to continue indefinitely in their efforts to correct the problem. Ford followed a warranty policy which refused to recognize the rights of buyers under the Uniform Commercial Code when the only remedy afforded by its limited warranty fails of his purpose. This was an "unfair" trade practice which was unlawful under the Consumer Protection Act. KRS 367.170. This is not the case of a motor vehicle in which there was an identifiable defect which Ford reasonably believed could be corrected satisfactorily within a reasonable period of time. Instead, there was never any assurance that the defects in the truck could be remedied so as to give Mr. and Mrs. Mayes the benefit of their bargain. The trial court did not err in overruling Ford's motion for a directed verdict on the issue of its liability under the Kentucky Consumer Protection Act.

### III

### PUNITIVE DAMAGES

Ford asserts that the trial court erred in permitting the jury to return a verdict for punitive damages. Ford argues that the claim of Mr. and Mrs. Mayes is based upon contract and that punitive damages are not awarded for mere breach of contract.

Kentucky has long followed the general rule that punitive damages ordinarily are not recoverable for a breach of contract. *General Accident Fire & Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685, 688 (1966); *Cumberland Tel. & Tel. Co. v. Cartwright Creek Tel. Co.*, 128 Ky. 395, 108 S.W. 875, 878, 32 Ky.L.Rep. 1357 (1908); *Deaton v. Allstate Insurance Co.*, Ky.App., 548 S.W.2d 162, 164 (1977). Nevertheless, this rule permits a plaintiff to recover punitive damages if the breach of contract also involved tortious conduct. D. Dobbs, *Law of Remedies* pg. 818 (1973).

In *Hibshman Pontiac, Inc. v. Batchelor*, Ind.App., 340 N.E.2d 377 (1976), the Indiana court overturned an award of punitive damages in an action brought against General Motors Corporation and its selling dealer for failure to carry out the express warranty to repair or replace defects in a new Pontiac automobile. The Indiana court stated:

> Many breaches of contract arise because of a valid dispute as to the scope of the contractual obligation or because of inability to perform. Clearly, breach of contract in such cases is not a "wrong" warranting punishment by punitive damages. Even in cases of unjustified intentional breach of contract unaccompanied by tortious conduct, we do not believe that the "wrong" involved is a wrong warranting the intrusion of punitive damages into a private transaction. The threat of punitive damages should not be allowed to chill the assertion of a valid contract dispute or to foreclose a contracting party from breaching a contract he no longer desires to consummate. With the exception of recovery of attorney fees, the aggrieved party has an adequate remedy in the recovery of compensatory damages. . . .

*Id.*, at 380. This statement accurately reflects the present rule in Kentucky.[3] The Uniform Commercial Code grants no new right to punitive damages. KRS 355.1–106(1).

---

**3.** We recognize that some courts have awarded punitive damages in contract actions without finding a separate tort. 11 *Williston on Contracts* § 1340 (3d ed. Jaeger 1968); G. Gilmore, *The Death of Contract* 83 (1974). However, this court has no authority to disregard the opinions of the Supreme Court of Kentucky or its predecessor court even if we desired to do so. SCR 1.030(8)(a). We also note that at least one member of that court favors abolishing punitive damages in all actions. Reed, Justice, concurring in *Hensley v. Paul Miller Ford, Inc.*, Ky., 508 S.W.2d 759, 764 (1974).

Mr. and Mrs. Mayes were fully compensated by the award of actual damages and attorney's fees, and they do not rely upon—any tort by Ford to support the award of punitive damages. Because their recovery under the Consumer Protection Act is for conduct which the act declares to be "unlawful," they argue that any violation of the act will support a claim for punitive damages. We disagree. After authorizing civil actions for damages attributable to unlawful acts under the Consumer Protection Act, KRS 367.220(1) provides:

Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

This provision does not purport to expand the right to claim punitive damages. It only makes clear that the Consumer Protection Act did not limit a right to punitive damages where one previously existed.

Because the claim of Mr. and Mrs. Mayes is based upon breach of Ford's warranty of the truck, we conclude that it was error to permit the jury to return a verdict for punitive damages.

## IV

### DAMAGES AWARDED

The jury awarded Mr. and Mrs. Mayes the following damages on a form verdict provided by the trial court:

(a) The difference between the cost of the truck as ordered ($6,566.34) and its market value on August 26, 1976,    $1,566.34

(b) The charges for official fees, usage tax and license and registration fees, contracted for by Plaintiffs:    $ 436.14

(c) The finance charges contracted for by the Plaintiffs:    $2,081.50

(d) Loss of use of the truck resulting from its defective condition:    $ 480.00

(e) Time lost from work resulting directly from the defective condition of the truck:    $ 317.00

(f) Incidental expenses for tires, gasoline and mileage:    $ 255.00

Ford raises numerous questions on this appeal relating to this form verdict included in the trial court's instructions to the jury. However, we will limit our consideration to those objections made known to the trial judge as required by CR 51.

■ Ford objected to that portion of the form verdict permitting the jury to award as damages all finance charges incurred by Mr. and Mrs. Mayes in financing the purchase of the truck. Ford argued to the trial court that the form verdict permitted the jury to award as damages all finance charges over the entire life of the loan which had many months to run. There is merit in this argument.

Under the Consumer Protection Act, Mr. and Mrs. Mayes are entitled to recover their "actual damages" as a result of Ford's unlawful conduct. KRS 367.220(1). On the basis of *Riggs Motor Co. v. Archer*, Ky., 240 S.W.2d 75 (1951), Mr. and Mrs. Mayes assert that actual damages included the finance charges. In the *Riggs Motor Co.* case, the plaintiff had financed the purchase of an automobile which was later determined to be stolen. The plaintiff was required to surrender the automobile to the true owner. In an action against the seller of the stolen automobile, the plaintiff was permitted to recover all finance charges on the purchase loan. The court held that the finance charges were a loss directly and naturally resulting from the breach of warranty of title.

The facts in this case can be distinguished from those in the *Riggs Motor Co.* case. Unlike the plaintiff in that case who was required to surrender the stolen automobile to the true owner, Mr. and Mrs. Mayes did have some use of the truck after August 26, 1976, the date on which they revoked acceptance and returned the truck to North City. Subsequently, possession of the truck was returned to Mr. and Mrs. Mayes with the understanding that they could use the truck pending the litigation. Mr. Mayes drove the truck for approximately 10 months until it was demolished in an accident on July 30, 1977. There is no evidence that Ford was in any way responsible for the destruction of the truck in the accident. Mr. and Mrs. Mayes are not entitled to recover finance charges attributable to the period of time when they had the use of the

truck or for any period following the destruction of the truck in the accident which was not the fault of Ford. Any recovery of finance charges should have been limited to those charges which accrued while the truck was in the possession of North City following the revocation of acceptance on August 26, 1976.

■ Ford asserts that the trial court erred in permitting recovery for loss of use. In its appellate brief, Ford relies upon the provision in its warranty including any "responsibility for loss of use of the vehicle." There are several serious weaknesses to this argument.

First, the only objection made to the trial court was based upon an absence of evidence to support a finding of loss of use of the truck. That ground for objection has been abandoned on appeal. Second, Mr. and Mrs. Mayes argue that this limitation applies only to the express warranty to repair and replace defective parts. According to them, the limitation has no application to the breach of the implied warranty of merchantability. *See Water Works & Industrial Supply Co. v. Wilburn*, Ky., 437 S.W.2d 951, 955 (1968). Once Mr. and Mrs. Mayes proved that the purpose of the limited remedy had failed within the meaning of KRS 355.2–719(2), there is a question whether they have also automatically shown that the exclusion of consequential damages was "unconscionable" under KRS 355.2–719(3). Most important, the Consumer Protection Act expresses a legislative intent to protect the consumer public. KRS 367.120(1). Public policy dictates that Ford not be permitted to limit the statutory remedy of consumers to recover "actual damages" under KRS 367.220(1) for a violation of the Consumer Protection Act.

## V

### ATTORNEYS FEES

■ In addition to authorizing the recovery of actual damages suffered as a result of an unlawful practice under the Consumer Protection Act, the statute provides:

In any action brought by a person under this section, the court may award, to the prevailing party, in addition to the relief provided in this section, reasonable attorney's fees and cost.

KRS 367.220(3). The trial court awarded Mr. and Mrs. Mayes $5,000 for reasonable attorney's fees and cost.

Ford claims that there is no evidence in the record to support this award. This argument is without merit for several reasons. First, awarding attorney's fees was not an abuse of discretion on the part of the trial court. Unless attorney's fees were awarded, the compensatory damages would in fact be inadequate. Persons such as Mr. and Mrs. Mayes having legitimate claims under the Consumer Protection Act would be deterred from enforcing their rights if they were required to absorb all costs of litigation. Second, the order awarding the attorney's fees recites that it was entered by the court after "having heard evidence," but there is no transcript of this hearing in the record. In the absence of a transcript or a narrative statement under CR 75.13, Ford has not demonstrated that the award of attorney's fees is excessive. We also note that the attorney for Mr. and Mrs. Mayes was not made a party to this appeal. *See Tyler v. Bryant*, Ky., 394 S.W.2d 454 (1965). There was no error in the award of $5,000 in attorney's fees to Mr. and Mrs. Mayes.

## VI

### RULING

That portion of the judgment awarding punitive damages is reversed; that portion of the judgment awarding damages for finance charges is reversed with directions to limit such damages to the period between August 26, 1976, and the date the truck was returned to the possession of Mr. and Mrs. Mayes; in all other respects the judgment of the circuit court is affirmed.

All concur.