**David G. CLINE, Appellant,**

v.

**ALLIS–CHALMERS CORPORATION, Crabtree Equipment, Inc., Melvin G. Crabtree, and Beneficial Commercial Corporation, Appellees.**

Court of Appeals of Kentucky.

May 24, 1985.

Charles J. Kamuf, Rummage, Kamuf, Yewell & Pace, Owensboro, for appellant.

Schuyler J. Olt, Greenebaum, Doll & McDonald, Louisville, M. Kirby Gordon, II, Gordon, Gordon & Craig, Owensboro, for Allis-Chalmers Corp.

Mark R. Hutchinson, Taylor, Burlew & Meyer, Owensboro, for Crabtree Equipment, Inc. and Melvin G. Crabtree.

John H. Helmers, Lizbeth Ann Tully, Holbrook, Gary, Wible & Sullivan, Owensboro, for Beneficial Commercial Corp.

Before COOPER, HOWARD and WILHOIT, JJ.

HOWARD, Judge.

In this case, the appellant, a purchaser of farm equipment, alleged fraud and breach of warranty against the manufacturer, selling dealer and lessor of the equipment. The purchaser appeals from a grant of summary judgment in favor of these parties.

The appellant, a farmer in Daviess County, wanted to purchase an Allis-Chalmers F-2 combine from Crabtree Equipment, Inc. He began negotiating with Crabtree Equipment in April of 1982. Allis-Chalmers Credit Corporation, which had financed the purchase of a tractor in February of 1982, and another lending institution refused to finance the purchase of the combine. However, Crabtree contacted Beneficial Commercial Corporation which agreed to buy the combine and lease it to the appellant.

On July 13 or 14, 1982, appellee, Melvin G. Crabtree, owner of Crabtree Equipment, went to the appellant's farm with the lease agreement and a retail purchase order for the combine. The appellant signed both documents as well as a security deposit agreement. The appellant needed a special piece of equipment called a bean head for which Crabtree Equipment had difficulty in obtaining the necessary parts. The com-

bine also required certain other repairs. Because of these problems, the combine was not delivered until October 22, 1982.

After its delivery, the combine began having mechanical troubles that persisted throughout the harvest season. These problems included broken oil seals, transmission and turbo malfunctions, and recurring leakage of water into the engine oil. As a result, the combine was used very little although Crabtree made efforts to repair the combine and permitted the appellant to borrow other equipment. The engine was completely rebuilt in January of 1983, but the appellant refused to pick up the combine because he felt the combine would not ever be properly repaired.

Under the terms of the lease agreement, appellant agreed to pay Beneficial $4,600 initially and make further payments of $12,532.47 per year for five years. The appellant paid the $4,600 but failed to make any other payments to Beneficial. Consequently, Beneficial, in May of 1983, brought an action against the appellant for failure to make these payments. Beneficial sued in New York pursuant to a choice of forum provision in the lease agreement designating New York as the jurisdiction for all actions arising from the lease.

The appellant brought the instant action in Daviess County alleging *inter alia* fraud, misrepresentation, and breach of warranty against Crabtree Equipment, Melvin G. Crabtree, Allis-Chalmers, and Beneficial. On August 13, 1983, the trial court dismissed Beneficial on the grounds that appellant had subjected himself to the jurisdiction of New York courts. On May 18, 1984, the trial court granted a summary judgment on all claims to Allis-Chalmers. A summary judgment was also granted to Crabtree and Crabtree Equipment on all allegations in the complaint except three. The appellant brings the appeal from this ruling.

The appellant contends that Crabtree fraudulently induced him to sign the lease agreement with Beneficial. When appellant was negotiating the purchase of the combine with Crabtree, appellant alleges that Crabtree described Allis-Chalmers Credit's lease agreement as a lease with an option to buy. Appellant further alleges that on the night he signed the Beneficial lease, Crabtree told him that the Beneficial lease was also a lease with an option to purchase. Actually, the Beneficial agreement is a true lease containing no option to purchase provision. However, appellant admits that he had an opportunity to read the entire agreement but in fact had only read the first few lines. Thus, he maintains that he relied on Crabtree's assertions and was unaware that the agreement was not a lease with an option to buy when he signed it.

In the complaint, appellant seeks recision of the lease, damages, costs, return of his trade-in and return of his security deposit. It is unclear whether the allegations of fraud are the basis of the prayer for recision or the prayer for damages. Whether or not the opportunity to read the contract is a controlling factor depends greatly on the manner in which appellant intends to use the claim of fraud.

 If the appellant intends to argue that fraud, despite his opportunity to read the contract, is a ground for recision, then he misstates the law. In general, a person who has the opportunity to read a contract, but does not do so and signs the agreement, is bound to the contract terms unless there was some fraud in the process of obtaining his signature. *Prewitt v. Estate Building and Loan Association*, 288 Ky. 331, 156 S.W.2d 173 (1941). *See Clark v. Brewer*, Ky., 329 S.W.2d 384 (1959). Thus, his negligence in failing to read the contract prevents any reliance on oral representations at the time of his signing. *Id.* Therefore, the lease or the purchase order in the instant case may not be rescinded on the basis of fraud.

However, if the appellant seeks to hold Crabtree liable for damages for fraud in inducing him to sign the lease, the law prescribes a different result. In *Kreate v. Miller*, 226 Ky. 444, 11 S.W.2d 99, 101 (1928), the Court stated that although oral representation, contrary to the actual lan-

guage of a contract, will not result in a recision of that contract where the plaintiff had an opportunity to read it, "it is entirely possible for them to be so bound, and yet have a cause of action sounding in deceit against a third party who by his actionable misrepresentations got them so bound."

In *Kreate, supra,* purchasers of land signed a contract that clearly stated the transaction was for cash. The purchasers maintained that they were told by the real estate agent that the terms were for about half of the total amount in cash and balance was due in payments. The purchasers admitted that they did not read the contract or at least they did not read it very thoroughly. The purchasers sought redress for fraud.

The Court noted that in general negligence of one party, such as signing a contract without reading it, bars a suit for fraud against another. Thus, a party to a contract must exercise the same care to protect himself as the ordinary prudent man would use in the same or similar cases. Further, the Court recognized that fraud can be of so many forms that a particular definition should not be set, thus each case should be considered on its own facts. Further, one factor in determining whether ordinary care was exercised or not in signing a contract a party failed to read is "the extent of the confidence he is entitled to place in the person procuring his signature." *Id.* at 102.

In the instant case, appellant had an eleventh grade education and was capable of reading the lease. Further, he had the opportunity to do so. However, he maintains that Crabtree told him that the lease had an option to buy provision. The appellant argues he believed that statement without reading the lease because of his faith in Crabtree developed through several prior dealings. Thus, as in *Kreate, supra,* whether the appellant exercised ordinary care under circumstances in signing the lease without reading it was a question for the jury and summary judgment was inappropriate.

The appellant also contends that Crabtree misrepresented the combine as a 1982 model when in fact it was a 1980 model. The original complaint alleged fraudulent misrepresentation on the part of Crabtree. This allegation was decided in favor of Crabtree by summary judgment. However, the trial court reserved for trial the allegation in the complaint that Crabtree negotiated with the appellant the sale of a 1982 combine in July of 1982. We are not sure what effect the trial court intended by these seemingly conflicting rulings, but it is apparent that the question of which model year Crabtree represented is left to the jury. Hence, appellant's argument is unnecessary.

The appellant argues that all warranties made by the appellees, Crabtree and Allis-Chalmers, apply to him. In contrast, Allis-Chalmers argues that there is no privity of contract between the appellant and Allis-Chalmers or by implication to Crabtree. Through the lease agreement, Beneficial is the actual purchaser of the combine and the appellant is only a lessee of Beneficial. Allis-Chalmers contends that the appellant is then a third party to the contract to whom the warranties do not extend under KRS 355.2–318. This provision states that a seller's express or implied warranties only extend to a natural person who is in the family, household, or a guest of the buyer, and it is reasonable to expect them to use the goods.

The appellant signed the lease agreement and purchase order in July of 1982. A portion of the purchase order supplied by Allis-Chalmers states: "I HAVE READ THE WARRANTY AND CONDITIONS ON THE REVERSE SIDE HEREOF AND AGREE THAT THEY ARE PART OF THIS ORDER." Underneath this statement appellant signed on the line marked "PURCHASER'S SIGNATURE." Further, several Allis-Chalmers documents were entered into evidence through Ray Sides, an employee of Allis-Chalmers, showing that parts and labor for repair of the combine were provided to the appellant under the warranty provisions of the purchase order. These dealer reports also list the appellant

as owner. Thus, the appellant was treated as the owner by both Allis-Chalmers and Crabtree until this appeal. The appellees cannot now deny the ownership status of the appellant.

The most convincing evidence of the appellant's standing to sue for breach of warranty is the language of the Beneficial lease agreement. Paragraph 4(b) of that agreement provides that "LESSOR AGREES TO ASSIGN TO LESSEE, SOLELY FOR THE PURPOSE OF MAKING AND PROSECUTING ANY SAID CLAIM, ALL OF THE RIGHTS WHICH LESSOR HAS AGAINST THE SUPPLIER FOR BREACH OF WARRANTY RESPECTING THE EQUIPMENT." Therefore, by the clear language of the lease agreement and the conduct of the appellees, appellant has the right as the owner of the combine to sue the suppliers Allis-Chalmers and Crabtree.

■ The appellant contends that Crabtree made an implied warranty of merchantability and its purported exclusion is ineffective under KRS 355.2–316. Under KRS 355.2–316, to include a warranty in a writing the language must be conspicuous and contain the term merchantability. The warranty provisions in the purchase order were on the reverse side. Above the line for the purchaser's signature, the contract refers, in print heavier than most of the contract, to the warranty on the reverse side. The fact that an exclusion of any warranty appears on the back of a contract will not per se render the exclusion ineffective. *Childers & Venters, Inc. v. Sowards,* Ky., 460 S.W.2d 343 (1970). Thus, the exclusion must meet the test of conspicuous language in KRS 355.1–201(10) i.e., the language must be written such that a reasonable person would notice it. Words written in larger type contrasting with the body of the writing are specifically referred to as conspicuous.

In the Allis-Chalmers warranty on the back of the purchase order, the first paragraph under "A. WHAT IS WARRANTED," provides in bold type that "THERE ARE NO WARRANTIES WHICH EX-TEND BEYOND THE FACE OF THOSE EXPRESSLY STATED HEREIN." This closely follows the language offered in KRS 355.2–316(2) as an example of a proper method of excluding implied warranties. The heading of paragraph G reads "NO DEALER WARRANTY." Further, under paragraph H, "NO REPRESENTATION OR IMPLIED WARRANTIES," the writing provides "COMPANY (Allis-Chalmers) ... DOES NOT MAKE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS."

■ These provisions are clear and conspicuous and would surely put a party on notice of the exclusion if he bothered to read them. Therefore, Allis-Chalmers and Crabtree did not make any implied warranties as a matter of law and the grant of a summary judgment was proper.

The Allis-Chalmers warranty was limited to parts and labor under certain restrictions outlined in the writing. The appellant contends this limited warranty failed in its essential purpose and was therefore ineffective. The appellant argues that because the defects in the combine were not corrected in a reasonable time, the limited warranty failed. For this proposition, he relies on *Ford Motor Company v. Mayes,* Ky.App., 575 S.W.2d 480 (1978).

In *Mayes,* the vehicle purchased by Mayes developed a grinding noise and vibration in the rear end of the truck about five weeks after sale. The dealer made several unsuccessful attempts to repair the problem. Mayes finally discovered that the truck's frame was bent and misshapen. These defects would cause excessive wear on all moving parts in the vehicle. Mayes revoked his acceptance of the truck and Ford, citing its limited warranty, refused to repurchase the truck.

The Court in *Mayes* stated that under certain circumstances a buyer has a right to revoke his acceptance of a vehicle if after acceptance he discovers a defect that substantially impairs the value of that vehicle under KRS 355.2–608. The Court held that "[w]hen the selling dealer fails

within a reasonable time to correct a defect which substantially impairs the value of a new motor vehicle, the buyer is entitled to revoke his acceptance of the vehicle." *Id.* at 484. Thus, Ford's limited warranty failed of its essential purpose and Mayes' revocation was upheld.

However, the instant case is substantially different from *Mayes.* It is undisputed that the combine had defects, particularly in the engine. Crabtree and Allis-Chalmers undertook repairs, which did not always prevent the same or similar defects such as water leaks from recurring. As a result, in January of 1983, the engine of the combine was completely rebuilt by Allis-Chalmers. After these repairs were completed, the appellant refused to pick up the combine.

■ Allis-Chalmers has stated its belief that the defects were corrected after rebuilding the engine. The appellant revoked his acceptance without showing the combine was still defective, and, thus, its value was substantially impaired. Further, only three months lapsed from the time of the actual repair until the engine was rebuilt. We do not feel that three months is an unreasonable time to allow Allis-Chalmers to effect repairs. Therefore, the warranty did not fail.

The appellant also contends that Crabtree is an agent for Allis-Chalmers because Crabtree is an authorized dealer. The appellant presumably wants to hold Allis-Chalmers liable under principal-agent theory on the claims of fraud and misrepresentations against Crabtree.

■ The courts have held that a dealership relationship does not create a true agency, but a "sales agency." *Stratton & Terstegge Company v. Stiglitz Furnace Company,* 258 Ky. 678, 81 S.W.2d 1 (1935); *American Collectors Exchange, Inc. v. Kentucky State Democratic Executive Committee,* Ky.App., 566 S.W.2d 759 (1978). Although the exact nature of such a sales agency has not been elucidated, it has been held that a dealership relationship with an unincorporated association does not protect the dealer from contractual liability

to a third party. *American Collectors Exchange, supra.* Cases cited by appellant such as *Volvo of America Corporation v. J.K. Wells,* Ky.App., 551 S.W.2d 826 (1977), are inapplicable to the question because the issue in those cases involve only warranties. Thus, Crabtree is not an agent for Allis-Chalmers, and Allis-Chalmers is therefore not liable for the alleged acts of Crabtree.

The final contention by appellant is that Beneficial is a necessary party under CR 19 and should not have been dismissed. The lease agreement has a choice of forum clause that in essence states that any dispute arising under the lease shall be tried in state or federal courts of New York under New York law. Beneficial had filed suit in United States District Court in New York when the appellant refused to make the first installment payment due in November of 1982. The trial court dismissed Beneficial because of the choice of forum clause and the principle of comity.

■ The appellant argues that because he is alleging fraud in the inducement, a choice of forum provision does not apply under *American Advertising Distributors, Inc. v. American Cooperative Advertising, Inc.,* Ky., 639 S.W.2d 775 (1982). The Court in *American Advertising* held that when the allegation is of fraud in the inducement and no provision of the contract is in dispute, a choice of forum provision does not control. However, because of our previous ruling, appellant can only proceed against Crabtree for fraud and misrepresentation and may not seek recision of the lease or purchase order. The issue before the New York Court is appellant's refusal to pay Beneficial under the lease agreement and thus the two suits are unrelated. The trial court acted properly in dismissing Beneficial as a party.

For the foregoing reasons, the judgment is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

All concur.