RENDERED: OCTOBER 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0141-MR


ROBERT J. LEEPER                                                    APPELLANT


|       | APPEAL FROM LIVINGSTON CIRCUIT COURT |
|-------|--------------------------------------|
| v.    | HONORABLE JAMES R. REDD, III, JUDGE  |
|       | ACTION NO. 21-CI-00092               |


COAD AUTO SALES, INC. D/B/A
COAD TOYOTA PADUCAH; AND
RAY H. MULLEN MOTOR
COMPANY                                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND JONES, JUDGES.

JONES, JUDGE: Robert J. Leeper appeals the Livingston Circuit Court's

summary dismissal of various civil claims he asserted against the above-captioned

appellees stemming from his purchase of a damaged truck. Upon review, we

affirm.

# I. BACKGROUND

On April 3, 2021, Leeper purchased a pre-owned truck with 283,444 miles on it "as-is" from appellee Ray H. Mullen Motor Company ("Mullen") for his personal use. While he was driving it several weeks later, the bumper and receiver assembly fell off the truck. Thereafter, while Leeper was filling the truck with gas, its gas tank fell off, too. Leeper had the truck towed back to Mullen, whose welder performed an inspection and confirmed that it was beyond repair due to the severely rusted and damaged condition of its frame. Leeper then requested a refund, which Mullen – citing the "as-is" nature of his purchase of the truck – refused. Afterward, he requested a refund from appellee Coad Auto Sales, Inc. ("Coad"), the entity from which Mullen had purchased the offending truck (also on an "as-is" basis), and Coad likewise refused. Dissatisfied, Leeper filed suit in Livingston Circuit Court against Coad and Mullen, asserting claims against Coad for negligence, negligence per se, and strict liability; and against Mullen for an alleged violation of Kentucky's Consumer Protection Act (KCPA) as codified in Kentucky Revised Statutes (KRS) 367.110 *et seq*.

Coad and Mullen defended[1] on several bases that eventually underpinned their respective motions for summary judgment. Among those bases,

---

[1] Mullen filed a conditional cross-claim against Coad for indemnity, which was dismissed and is not at issue.

Coad argued lack of privity; that the "economic loss rule" barred Leeper's negligence and strict liability claims; and that the basis of Leeper's negligence per se claim – its alleged violation of KRS 186A.540 – was unsupported by the evidence. As for his KCPA claim, Mullen argued Leeper adduced no evidence it had committed any kind of actionable unfair trade practice. Additional relevant facts will be discussed in our analysis, below. The circuit court granted the appellees' summary judgment motions, and this appeal followed.

## II. STANDARD OF REVIEW

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Phoenix American Adm'rs, LLC v. Lee*, 670 S.W.3d 832 (Ky. 2023) (internal quotation marks and citations omitted).

## III. ANALYSIS

We begin our analysis with Leeper's KCPA claim against Mullen. Leeper asserts the circuit court erred in dismissing this claim because Mullen

-3-

essentially sold him a worthless vehicle and refused to give him his money back afterward. He also asserts that Kentucky has recognized the validity of similar claims in prior caselaw, citing *Ford Motor Company v. Mayes*, 575 S.W.2d 480 (Ky. App. 1978), and *Myers v. Land*, 314 Ky. 514, 235 S.W.2d 988 (1950).

We disagree. The applicable law relative to KCPA claims was explained in *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991):

> Not every failure to perform a contract is sufficient to trigger application of the Consumer Protection Act. The statute requires some evidence of "unfair, false, misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present. *Dare to Be Great, Inc. v. Commonwealth, ex rel. Hancock*, Ky., 511 S.W.2d 224 (1974). There is an analogy between the Consumer Protection Act claim asserted here and a tort claim for bad faith based on an insurer's failure to pay the amount due its policyholder. In *Feathers v. State Farm Fire and Casualty Co.*, Ky.App., 667 S.W.2d 693 (1983), the validity of which was recently reaffirmed in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176 (1989), the Court of Appeals said: "[T]he allegations [of the complaint] show substantial wrongs committed against a clearly protected interest and rights. We are not talking about bad manners or mere breakdowns in communications resulting in irritations injuring pride." *Feathers* at 696.

Here, Leeper was asked during his deposition to describe any unfair, false, misleading, or deceptive acts Mullen committed against him. In response, he

did not contend Mullen violated any contractual, statutory, or common law duty. He did not contend that Mullen uttered any misrepresentation that induced him to purchase the truck. The only response he gave was to repeat the essence of his claim set forth above. In other words, he simply took issue with the operative effect of the "as-is" clause in the purchase agreement.

However, "as-is" clauses are not an unfair trade practice; rather, they are consistent with the Uniform Commercial Code (UCC) as adopted by Kentucky law. KRS 355.2-316(3)(a) provides that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]"

As for the two cases Leeper cites in support of his claim, they are distinguishable and undermine it. In *Ford*, 575 S.W.2d 480, the "unfair trade practice" at issue, deemed violative of the KCPA, was Ford's conduct with respect to its warranty on a vehicle purchased by the claimants. Its warranty was limited to vehicle repairs, but evidence demonstrated that the claimants' vehicle could not be repaired within a reasonable time or at all. Nevertheless, Ford insisted that the claimants had no remedy other than to allow it and its dealer to continue indefinitely in their efforts to correct the problem; and in so doing, Ford followed a

warranty policy which refused to recognize the rights of buyers under the UCC to rescind when the only remedy afforded by its limited warranty failed of its purpose. *Id*. at 486. Here, the holding of *Ford* has no bearing upon the validity of Leeper's claim against Mullen because Mullen gave him no warranty at all. The *Ford* Court also recognized, consistent with what is set forth above, that warranties may be validly disclaimed in this context. *Id*. at 483.

As for *Myers*, 235 S.W.2d 988, this pre-UCC case involved claimants who were able to successfully rescind their purchase of defective concrete block manufacturing equipment from a seller – notwithstanding a full disclaimer of virtually all warranties in the purchase agreement – because evidence of record demonstrated their purchase was induced by the seller's misrepresentations, *id*. at 989; and because the disclaimer of warranties was "found in a long and formidable document prepared by the seller and that it was doubtless unnoticed or its import uncomprehended by the buyer." *Id*. at 990. Certainly, misrepresentations and hidden disclaimers are examples of unfair trade practices. In the case at bar, however, Leeper has identified no misrepresentation uttered by Mullen; nor has he ever claimed that he failed to notice or comprehend the "as-is" clause in his purchase agreement.

In sum, Leeper has failed to demonstrate that Mullen committed any substantial wrong against his clearly protected interests or rights. *See Roberts*, 813

S.W.2d at 291. Accordingly, the circuit court committed no error in summarily dismissing his KCPA claim against that entity.

We turn next to what Leeper asserted against Coad, beginning with his negligence and strict liability claims. It is unclear whether Leeper is appealing the circuit court's dismissal of these claims because, over the course of his opening and reply briefs, he omits any mention of the words "negligence" and "strict liability," and instead simply faults the circuit court for dismissing his "Claim Against Coad for Violation of KRS 186A.540." Regardless, his negligence and strict liability claims were legally precluded by Kentucky's economic loss rule because his alleged damages have always been limited to the losses he sustained due to the difference between what he believed the truck's value should have been and what it turned out to be. As held by our Supreme Court,

> [T]he parties' allocation of risk by contract should control without disturbance by the courts via product liability theories borne of a public policy interest in protecting people and their property from a dangerous product. . . . Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties.

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W. 3d 729 (Ky. 2011) (citation omitted).

-7-

This, in turn, leads to Leeper's "Claim Against Coad for Violation of KRS 186A.540" – a claim he asserted in his complaint under the ambit of "negligence per se." Coad defended against this claim by asserting (1) the economic loss rule;[2] (2) that the statute was inapplicable for want of privity (*i.e.*, because Coad did not directly sell the truck to Leeper); and (3) even if the statute was applicable, no evidence demonstrated its disclosure requirements were triggered.

In summarily dismissing this claim, the circuit court found Coad's second and third defenses dispositive. For purposes of our analysis, we will focus only upon the third. KRS 186A.540 provides:

> (1) An individual, or a dealer required to be licensed pursuant to KRS Chapter 190, shall disclose all damages to a motor vehicle:
>
>> (a) Of which the individual or the dealer has direct knowledge;
>>
>> (b) Which result in repairs, for items other than wheels, tires, or glass, that exceed two thousand dollars ($2,000); and
>>
>> (c) That occur while the motor vehicle is in the individual's or the dealer's possession and prior to delivery to a purchaser.

---

[2] "Negligence per se" is not the only way, and is perhaps not the most appropriate way, to characterize a violation of KRS 186A.540. Such violations have, for example, been regarded as an "unfair trade practice" capable of sustaining a KCPA claim. *See Royal Auto Sales, LLC v. Price*, No. 2021-CA-0731-MR, 2022 WL 879763 (Ky. App. Mar. 25, 2022) (cited herein for purposes of illustration, rather than persuasive value).

(2) Disclosure under this section shall be in writing and shall require the purchaser's signature acknowledging the disclosure of damages.

What Leeper adduced in support of his claim relative to this statute was as follows. First, Leeper cited an affidavit from Cherrie Roan, the individual who originally sold the truck to Coad. Roan indicated that shortly after she brought her truck to Coad on October 15, 2020, for "routine service," a representative from Coad told her, "[I]t was unsafe to drive because they had found major tie rod problems, and that [she] had to get a loaner to get home or to go anywhere." Shortly afterward, "the same Coad employee who had helped [her] during the October 15 visit called and told [her] that when the Coad mechanics put [her] truck up on the rack to start repairs, they found that the framework had major cracks in it. He also told [her] that the Coad mechanics had said they found [her] truck to be totally unrepairable and unsafe to drive." Thereafter, she purchased another vehicle from Coad, and Coad took her truck as a trade-in.

Second, Leeper cited a "Toyota Quality Vehicle Inspection" form document – a document that is undated and includes no information linking it to the truck, but which Leeper claims Coad produced during discovery. In the "require immediate attention" column, a box is checked next to: "Steering Gear Box/Linkage and Boots/Ball Joints/Dust Covers." The "comments/estimates" section also includes the following notations:

Replace Steering rack
Steering rack bushings
cutter[?] tie rod ends
M/B of tires
Align

Third, he cited the affidavit of Barry Miller, a mechanic who inspected the truck shortly after Mullen's representatives inspected it. Miller averred that when he "inspected the undercarriage of the truck, [he] found major deterioration in the frame at multiple locations" and that the cost of parts and labor to repair the problems "would far exceed $2,000."

Absent from *the record*, however, is *evidence* that the truck sustained any damage or was actually repaired to any extent – let alone to the extent of $2,000 – while Coad had it in its possession. Leeper therefore failed to demonstrate that the mandatory reporting requirements of KRS 186A.540 were triggered; and consequently, Leeper could not have premised any kind of claim against Coad upon a violation of that statute even if his lack of direct privity with Coad was wholly irrelevant.

As an aside, we have emphasized "evidence" and "of record" above for a reason. Leeper insists on appeal[3] that KRS 186A.540 *was* effectively

---

[3] Coad argues Leeper's contention that it "repaired" the truck was never raised below because Leeper did not make that contention in the response he filed to its summary judgment motion. Coad is correct that Leeper made no such written argument, but he did make an oral argument to that effect – for the first time – during the December 21, 2022 summary judgment hearing. Regardless, it is unnecessary to discuss whether Leeper effectively preserved this argument because, as discussed, the evidence he adduced was insufficient to support it.

-10-

triggered because Coad *did* make over $2,000 in repairs to the truck. To this point, he makes references in his opening and reply briefs to an ostensible document which, from his telling of it, originated from Coad and included the following statements regarding the truck while the truck was in Coad's possession: "Steering gear loose and leaking, attempted replacement [sic] of steering gear, steering shaft seized to steering gear, power [sic] steering pressure line started to twist apart during removal. Stopped repair spoke with customer on concern with vehicle. Customer traded vehicle in to dealer."

Relying upon this ostensible document, Leeper surmises Coad must have ultimately repaired the truck's steering mechanism before selling it to Mullen. Further, Leeper surmises the value of these "repairs" would have exceeded $2,000; and in support, he cites a "supplemental expert disclosure," which he filed of record on the date of the summary judgment hearing, December 21, 2022. There, Leeper stated that he expected his expert mechanic, Barry Miller "to opine that based on his experience and research, the cost of replacing the steering rack, inner tie rods and bushings on the subject vehicle would have exceeded $2,000 at relevant times, independent of the cost of replacing the vehicle's frame."

With that said, no evidence of record supports Leeper's argument in this vein. The ostensible document discussed above is not of record, nor did Leeper designate it as part of the record, and we accordingly cannot consider any

claim or contention based upon it. *See* Kentucky Rule of Appellate Procedure (RAP) 25(B). Indeed, while Leeper claims it appears in the appellate record at "225-227," those cited pages only encompass the "itemization of damages" filed by his attorney and the "Toyota Quality Vehicle Inspection" form document previously discussed. Additionally, the "supplemental expert disclosure" valuing the surmised repairs in excess of $2,000 was not signed or sworn by Barry Miller, the proffered expert, and was thus nothing more than a promise of forthcoming evidence from Leeper's counsel. Representations of counsel are not the affirmative evidence required to defeat a motion for summary judgment. They are not evidence at all. *See Mason v. Commonwealth*, 331 S.W.3d 610, 624-25 (Ky. 2011).

## II.  CONCLUSION

In its order of summary judgment, the Livingston Circuit Court sympathized with Leeper and provided an apt summation of this case with which we agree: "Although there may be ethical considerations, the Court believes under Kentucky law there is no liability for Mullen or Coad." In light of the foregoing, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

C. Thomas Miller
Paducah, Kentucky

BRIEF FOR APPELLEE RAY H.
MULLEN MOTOR COMPANY:

Edwin A. Jones
Paducah, Kentucky

BRIEF FOR APPELLEE COAD
AUTO SALES, INC. D/B/A COAD
TOYOTA PADUCAH:

James A. Sigler
Paducah, Kentucky